JACOB W. CARPER v. EMANUEL A. RICHARDS.

1. A neglect on the part of a justice of the peace, in an attachment proceeding before him, to enter the affidavits at length, or to particularly state the nature thereof on his docket, does not render the subsequent proceedings illegal.

2. The fact of an affidavit appearing to have been issued at the commencement of the attachment proceedings, although denominated an "affidavit for proceedings against S, as garnishee," may be presumed to have contained a legal cause for attachment.

3. Under such affidavit, in the absence of any mention of an undertaking, and a return of the summons "not found," the nonresidence of the defendant, one of the causes for attachment will be presumed to have been stated in the affidavit.

·4. Entering judgment against the garnishee upon his answer confessing his indebtedness, upon his appearance at the return of the summons, and before judgment against the defendant, is to be regarded, after judgment, as only a clerical error, and no cause for reversing the judgment so rendered against the judgment debtor.

ERROR to the court of common pleas of Fairfield county. Reserved in the district court.

January 20, 1859, Richards sued Carper before a justice of the peace for $185, for services. A summons was issued for Carper, and returned " not found."

The transcript of the justice recites, that " January 20, 1859, plaintiff filed affidavit for proceedings against J. W. Stinchcomb, as garnishee," and that the " order of attachment " was returned, indorsed, served by delivering to Stinchcomb a certified copy thereof—" no property found to attach." That " Stinchcomb, the garnishee, appeared, and was examined under oath, and examination reduced to writing, signed and filed," and that the justice found, from such examination, " that at the time of the service of the order of attachment and notice " on Stinchcomb, " he was possessed of, and indebted to," the defendant, Carper, in the sum of from two to three dollars, for fees paid him for Carper. The justice thereupon orders the garnishee to pay the amount of his said indebtedness into court on the 25th of March, 1859, to which time the cause was adjourned for service on Carper by publication, it appearing, from the return of the summons, that he had not been found. The transcript of the justice further recites, that on March 25, 1859, Richards " made proof of the publication of notice for three consecutive weeks in the ' Ohio Eagle,' commencing on the 3d day of February, A.D. 1859," and that Carper having failed to appear, made default. That trial was had, and Richards " was sworn and examined as to his claim against the defendant." ·On consideration whereof, the justice finds " that the plain

tiff's claim against the said defendant is $185. " It is, there fore, considered," by the justice, " that the plaintiff recover of the said defendant the said sum of one hundred and eighty five dollars debt, and his costs herein, taxed at five dollars and fifty-five cents."

To reverse this judgment of the justice of the peace, Carper filed his petition in error in the court of common pleas, assigning for error:

1. The affidavit for the order of attachment was not entered by the justice on his docket.

2. The affidavit of the plaintiff against the garnishee was not entered by the justice on his docket.

3. No bond was given by the plaintiff to the defendant before the issuing of the order of attachment; and it does not appear from the transcript and proceedings that Carper was a nonresident of the county.

4. No notice in writing was served by the constable on the garnishee, requiring him to appear before the justice on the return day of the attachment, and answer under oath touching the property, etc., of Carper in his hands.

5. The constable having returned the summons for Carper, indorsed " not found," and the order of attachment indorsed " no property found to attach," the justice erred in not dismissing the action.

6. All the proceedings of the justice, after such returns, were erroneous.

7. The justice erred in rendering a judgment against Carper for the amount of Richards' claim, after exhausting the fund in the hands of the garn'shee.

8. The justice erred in rendering final judgment against. the garnishee, before the action against Carper had been determined.

9. The justice had no jurisdiction of the cause of action.

10. The judgment was procured by the fraud of the plaintiff and his attorney, the latter being the garnishee in the action.

11. Judgment was given for Richards when, by law, it should have been for Carper.

The court of common pleas affirmed the judgment of the justice of the peace, and awarded execution from that court to carry the judgment into effect, as if it had been rendered therein.

To all which Carper excepted, and to reverse the judgment of affirmance, filed a petition in error in the district court, and therein the case was reserved to this court for decision.

*Rennick & Williams* and *Hunter & Daugherty*, for plaintiff in error.

*J. M. Connell*, for defendant in error.

SUTLIFF, C. J.—This case comes before us upon the general assignment of error, that the court of common pleas erred in affirming the judgment of the justice of the peace. It becomes necessary, therefore, to refer to the several errors alleged against the judgment of the justice of the peace, for which the court of common pleas was asked to reverse said judgment; for if either of the assignments of error was well made, and in fact existed, the plaintiff in error was entitled to a judgment of reversal; and in such case it would be error in the court of common pleas to affirm the judgment so rendered by the justice.

Let us, then, recur to the assignment of errors in the court of common pleas upon which that court acted.

The benefit of attachment proceedings has been greatly enlarged by the provisions of the code, and extended, in civil actions for the recovery of money, to actions against resident defendants as well as nonresidents. The order of attachment may issue for various causes, and at the time of commencing the action, or afterward.

But the proceedings in attachment are still very properly called statutory proceedings, and continue to be governed, as they always have been, in this state, by statutory provisions.

To determine whether the errors assigned really exist, we have, therefore, to recur to the provisions of the code, governing attachment proceedings.

Carper v. Richards.

It is provided by section 28 of the justices act, that the plaintiff shall have an order of attachment against the property of the defendant, in a civil action before a justice of the peace for the recovery of money, before or after the commencement thereof, when there is filed in his office an affidavit of the plaintiff, his agent or attorney, showing the nature of the plaintiff's claim, that it is just, the amount which the affiant believes the plaintiff ought to recover, and the existence of one or more of nine different causes therein named for an attachment.

It is by this provision only required of the plaintiff that he file in the office of the justice the affidavit as prescribed, to entitle him to the attachment, except in the cases where an undertaking is also required. It is not even required that the affidavit be entered on the docket of the justice, in order to entitle the plaintiff to the attachment; much less is it made the duty of the plaintiff to make the entry, or cause it to be made, on the docket. The same is true of the affidavit against the garnishee. The provision is, that when the plaintiff or his agent shall make oath, in writing, that he has good reason to, and does believe, that any person named in the affidavit, and within the county, has property of the defendant, etc., in his possession, etc., he shall be entitled to the garnishee process, as prescribed by the statute; but it is not required that such affidavit shall first be entered upon the docket. Nor is it required by the statute that the undertaking exacted in certain cases by the plaintiff, shall be entered upon the docket before the attachment process issue. All that is required by the statute, in such cases, is that "the order of attachment shall not be issued by the justice, in the cases where an undertaking is required, until there has been executed in his office, by one or more sufficient sureties of the plaintiff, to be approved by the justice; an undertaking not exceeding double the amount of plaintiff's claim," etc. Nothing further is required of the plaintiff in relation to the undertaking than that he execute it as required.

In this case, it is true, the transcript does not show that the plaintiff, in fact, executed any undertaking before the

order of attachment was issued. But to this objection it may be answered that the record does not show that the cause for attachment, stated in the affidavit on which the order issued, was a cause for which an undertaking is required by the statute.

It has never been required of justices of the peace in this state, that they keep a full record of all papers, and proceedings in actions in their courts. Our present justices act is, in that regard, quite in accordance with preceding acts of the legislature, prescribing their duties.

Every justice of the peace is required by the present justices act (art. 14), to keep a book, denominated a docket, in which he is required to enter, 1. The title of every action in which the writ is served, or where the parties voluntarily appear. 2. The date of the writ, the time of its return, and, if an order to arrest the defendant, or attach property, was made, such fact must be stated, together with the affidavit upon which such order was made. 3. The filing of the bill of particulars of either party, and the nature thereof, and, when not of too great length, the same shall be entered at length on the docket, etc.

Now, from the fact that the actions, or the title of actions, " in which the writ *is served*," and not of actions in which the writ is returned *not served, only*, are required to be entered upon the docket, it is evident that the legislature did not intend to require of a justice to even enter the title of the action, much less to enter upon the docket affidavits and bills of particulars and undertakings in attachment proceedings, *prior* to the commencement of the action by issuing and delivering to the constable the summons or process in the case. For, if the constable should happen to return the same *not served*, not even the *title* of the action is required to be entered upon his docket. And if the action were legally commenced at its inception, and the process duly served and returned by the constable, it could not be claimed, with any show of reason, that the legality of the proceeding on the part of the plaintiff in commencing his action, could be destroyed, and the plaintiff become a trespasser, by the neg-

lect of the justice to afterward make the proper entries upon his docket.

It would follow, therefore, that even if it be conceded that the justice is required by the provision of the statute, to have the affidavit " entered at length on the docket," as it is expressly required that the bill of particulars shall be when not too long, the provision could only be regarded as *directory* to the justice, and not one upon which the validity of the proceedings necessarily depended.

But it will be observed, by recurring to the provisions of the statute, that while it is provided that the bill of particulars, when not of too great length, " shall be entered at length on the docket," it is only provided in relation to the affidavit, that the date of the writ, and " such fact " (the order to attach property), " must be stated, together with the affidavit upon which such order was made." The more natural and grammatical reading of the provision would therefore seem to be, to regard the words, " the fact of," as omitted, by an ellipsis, before the word affidavit. The provision would then read, by substituting these words, as follows: " if an order to * * * attach property was made, such fact must be stated, together with " (the fact of) " the affidavit upon which such order was made." It must, however, be conceded, that inasmuch as the whole proceeding is made to depend upon the facts stated in the affidavit, the reason for having the same copied at length upon the justice's docket, would seem to be as strong as that in favor of having the bill of particulars set forth at length. And if the length of the affidavit be an objection to its being spread out at length on the docket, the reason of the case might still require, as provided in relation to lengthy bills of particulars, that " the nature thereof,"—the causes stated in the affidavit—should be entered on the docket. We are not, however, here called upon to decide what would have been good practice in this regard by the justice. We need only say, that the provision, whether it be understood to merely direct an entry upon the docket of the fact of the affidavit having been made, or to direct the affidavit to be entered at length, or the nature thereof stated

16

upon the docket, is, in either case, only directory to the justice of the peace; and that its omission on the part of the justice, in either case, could not render invalid the proceedings in attachment.

The 4th cause in the assignments, does not appear upon the record; on the contrary, the transcript recites the service of both the order of attachment and notice on Stinchcomb.

The 5th, 6th, 7th and 9th assignments seem to rest upon the assumption that a garnishee process could not, under the attachment law, be issued after the return of the constable, "not found" as to the defendant, and "no property" as to his goods; and that the record shows such a case; and that it is necessary that there should appear to have been two affidavits in the case; one made under section 28, prior to issuing the order, and one made under section 37, subsequently to the issuing of the order of attachment. We do not so understand either the facts or the law of the case.

The transcript of the justice only makes mention of one affidavit, it is true, and mention is only made of its being for proceedings against the garnishee. But the date of the affidavit being the same as the filing of the bill of particulars, and commencement of the attachment proceedings, we can not presume, in the absence of a copy, that the affidavit was defective in its statements of a legal cause for attachment proceedings, as well as for garnishee process. And all the facts for both purposes, as required in section 28 and section 37, might as well be stated in one affidavit, as in two.

While, therefore, it would certainly have been very proper that the docket should have contained an entry of the jurisdictional fact—the affidavit and cause or causes therein stated, upon which only the order of attachment could be issued—we can not, in this case, say that the omission of such entry upon the docket is fatal to the proceeding. Especially since the justices act is to be construed under the liberal provisions of the code, which provides that "the rule of the common law that statutes in derogation thereof are to be strictly construed, shall have no application to the code; but that its

Carper *v.* Richards.

provisions, and all proceedings under it, shall be liberally construed, with a view to promote its object, and assist the parties in obtaining justice."

Inasmuch, therefore, as the transcript does show that an affidavit was filed at the date of the commencement of the attachment proceedings, although it is only expressed to have been filed for proceedings against J. W. Stinchcomb, as garnishee, we think it may reasonably be implied that the affidavit contained all the averments necessary to authorize the proceedings of the justice, in thereupon issuing his order of attachment. We think the maxim, *omnia presumuntur rite et solemniter esse acta donec probetur in contrarium*, is by the rule of construction referred to, made applicable to this case. Nor is there anything unreasonable in the application of the rule, since it was competent for the plaintiff to have shown the contrary, if the presumption in favor of the record were in fact untrue.

In reply to the 8th assignment, although it was irregular o render judgment against the garnishee, previous to rendering a judgment against Carper, the defendant in the attachment proceeding, it is sufficient to say, it is not an error prejudicial to the plaintiff in error; nor is it one of which he can take advantage. It is expressly provided (section 138 of code), that " the court in every stage of an action must disregard any error or defect in the pleadings or proceedings, which does not affect the substantial rights of the adverse party;" and no judgment shall be reversed or affected by reason of such error or defect. The record shows that a judgment was in fact rendered in the case against Carper shortly thereafter; the allegation of error, therefore, only amounts to an averment that the judgment was rendered against the garnishee prematurely. But it is expressly provided by the code (section 529), " rendering judgment before the action stood for trial, according to the provisions of this code, shall be deemed a clerical error." And by the preceding section, it is provided that *such* an error must have been presented and acted upon in the court

in which it occurred, before the superior or supervising court can take any cognizance of the alleged error.

The 10th assignment could only be made to appear by a bill of exceptions setting forth the evidence and exceptions, which is wanting in the record before us.

We are unable to perceive any error in the record, and the judgment of the court of common pleas must therefore be affirmed.

Judgment accordingly.

PECK, GHOLSON, BRINKERHOFF and SCOTT, JJ., concurred.